**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



```
------------------------------------------------------------- X
TIRSON RIVERA, on behalf of himself and all    |
others similarly situated,                      |
                                                |
                                   Plaintiffs,  |   Civil Action
                    - against -                 |
                                                |
                                                |   Case No.:
LIVunLTD LLC                                    |
                                   Defendant.   |
                                                |
                                                |
                                                |
------------------------------------------------------------- X
```

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Tirson Rivera ("Rivera" or "Plaintiff"), individually and on behalf of the putative collective and class (collectively, "Plaintiffs"), by and through his attorneys, Arenson, Dittmar & Karban, as and for his Complaint against LIVunLTD ("LIV" or "Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.      This action arises out of Defendant's failure to pay Plaintiffs overtime compensation as required by the FLSA and the NYLL; failure to pay Plaintiffs for all hours worked; failure to pay Plaintiffs on a weekly basis in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law, N.Y. Lab. Law §§190 *et al.,* § 650, *et al.* ("NYLL"); the failure to furnish Plaintiffs with accurate wage statements on each payday containing specific categories of information under NYLL 195(3); and Defendant's policy and practice of time shaving under which it altered employee time records to reflect fewer hours than those actually worked and paid Plaintiffs only for the remaining time.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction of the Plaintiff Rivera state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over the Plaintiff Rivera's FLSA claims pursuant to 29 U.S.C. § 216(b).

3.     The Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## PARTIES

5.     Plaintiff Rivera is an adult individual residing in New York, New York.

6.     Upon information and belief, at all relevant times herein, LIV was and is a foreign limited liability company created under the laws of the state of Delaware.

7.     Upon information and belief, LIV maintains its principal place of business in New York City at 9 East 40th Street New York, New York 10016 and/or 107 Airport Executive Park, Nanuet, NY 10954.

## STATEMENT OF FACTS

8.     Defendant LIV is a global hospitality company which specializes in managing amenities for residential, commercial and hotel properties in New York and other places.

9.     From six years prior to the commencement of this action LIV employed

employees throughout New York, including, but not limited to, lifeguards, pool attendants, pool managers, area managers, baristas, bellmen, concierges, estheticians, front desk associates, handymen, massage therapists, health club attendants and porters (collectively "Manual Employees").

10.    Upon information and belief, at all relevant times, Defendant acted as Plaintiffs' employer within the meaning contemplated by 29 U.S.C. § 203(d) and N.Y. Lab. Law § 651(6).

11.    Upon information and belief, at all relevant times, Plaintiffs were employees of Defendant within the meaning contemplated by 29 U.S.C. § 203(e) and N.Y. Lab. Law § 651(5).

12.    Upon information and belief, at all relevant times, the activities of Defendant constituted an "enterprise" within the meanings contemplated by 29 U.S.C. §§ 203(r), (s).

13.    Upon information and belief, Defendant is an "enterprise engaged in commerce" within the meaning contemplated by 29 U.S.C. §§ 201 *et seq.* and the cases interpreting it

14.    Plaintiff Rivera has worked for LIV from approximately July 2021 to December 7, 2024.

15.    Throughout his employment, Rivera has worked as a lifeguard.

16.    From approximately July 2021 through approximately February 2022, Rivera worked as a lifeguard at Plymouth Tower, located at 340 East 93rd Street, New York, New York 10128, as well as other locations.

17.    During this period, Rivera's job title was "lifeguard."

18.    During this period, LIV paid Rivera approximately $15 per hour.

19.    During this period, Rivera typically worked 3 to 4 days a week, either from

approximately 6 a.m. to either approximately 1:00 p.m. or 1:10 p.m., or approximately 3:40 p.m. to either approximately 11:00 p.m. or 11:10 p.m.

20.     Defendant subjected Rivera and other Plaintiffs to its policy and practice of time shaving under which it altered employee time records to reflect fewer hours than those actually worked and paying employees only for the remaining time.

21.     During the first two months of his employment at LIV, Rivera typically clocked in at 6 a.m. to get the pool and himself ready for the pool to be open at 6:30 a.m.

22.     During the first two months of his employment, LIV altered the time on Rivera's pay records from approximately 6 a.m. to 6:30 a.m. and failed to pay him for the pre-shift work he performed.

23.     Although Rivera typically worked for approximately 20 minutes prior to the official start time of his morning shift, which was at 6:30 a.m., or the official start time of his afternoon/evening shift, which was at 4 p.m., LIV did not pay him for his pre-shift work.

24.     From approximately 6:10 a.m. to approximately 6:30 a.m., Rivera typically did a number of tasks that were necessary to get the pool ready for swimmers at 6:30 a.m. These tasks included, without limitation, checking the PH balance and chlorine in the pool, removing things that had been left in the pool, putting away toys, swim boards, noodles and goggles that had been left out in the pool area from the night before, scheduling residents for pool appointments, cleaning the pool and the pool area; and changing into his mandatory LIV uniform.

25.     LIV subjected Rivera and other Plaintiffs to its policy and practice of not paying its employees for all the hours worked they worked.

26.     After the first two months of his employment, Rivera stopped clocking in at 6

a.m., per his manager's instructions, but continued to start working at approximately 6:10 a.m. doing the things that were necessary to get the pool and himself ready for the pool to be open at 6:30 a.m.

27.    LIV did not pay Rivera for his pre-shift work at Plymouth Tower, despite its requirement that the pool be open and ready for swimmers at 6:30 a.m. and its knowledge that Rivera arrived early and performed necessary pre-shift work for its benefit.

28.    On a number of occasions, Rivera had to remain on duty after the official end time of his morning shift, which was 1 p.m., to wait for the next shift's lifeguard to arrive. When he did so, typically Rivera would remain on duty an additional ten minutes waiting for the next lifeguard.

29.    Rivera told his manager that he had to work after 1 p.m. because the next shift's lifeguard did not arrive on time, each time he did so.

30.    At times, LIV paid Rivera for this post-shift work after 1 p.m. and at times it did not.

31.    While working the afternoon/evening shift at Plymouth Tower, Rivera typically started working on his afternoon/evening shift at approximately 3:40 p.m. to get ready to start his shift at 4:00 p.m. and finished working at either approximately 11:00 p.m. or 11:10 p.m.

32.    Rivera's pre-shift work from approximately 3:40 p.m. to 4:00 p.m. included, without limitation, changing into his mandatory LIV uniform, checking the PH balance and chlorine in the pool, cleaning the pool, if needed, picking up toys and other swim-related items left around the pool and making sure that everything was in order.

33.    Rivera's post-shift work from 11:00 p.m. to approximately 11:10 p.m. included,

without limitation, cleaning the pool area, putting away swim-related items, waiting for last-minute swimmers to finish swimming and changing out of his mandatory LIV uniform into his street clothes.

34.     LIV failed to pay Rivera for his pre and post-shift work when he worked his shift with the official start time of 4 p.m. and the official end time of 11 p.m.

35.     LIV did not pay Rivera for his pre-shift work at Plymouth Tower, despite its requirement that Rivera had to be the lifeguard on duty at 4 p.m. and its knowledge that Rivera arrived early and performed necessary pre-shift work for its benefit.

36.     LIV did not pay Rivera for his post-shift work at Plymouth Tower, despite its knowledge that Rivera was working after 11 p.m. and that Rivera was performing necessary post-shift work for its benefit.

37.     From approximately January 2022 through approximately February 2022, Rivera worked as a lifeguard at both the Park Hyatt Hotel and Condominium at 153 West 57th Street, New York, New York 10019 ("Park Hyatt"), as well as Plymouth Tower.

38.     From approximately March 2022 through approximately July 2023, Rivera worked at the Park Hyatt Hotel and Condominium at 153 West 57th Street, New York, New York 10019.

39.     When Rivera began working exclusively at the Park Hyatt, in approximately March 2022, his job title was "lifeguard."

40.     From approximately January 2022 through approximately March 2022, LIV paid Rivera $18 per hour for his work at the Park Hyatt.

41.     In approximately April 2022, LIV assigned Rivera the title of "assistant

manager."

42.     From approximately April 2022 through approximately July 2023, LIV paid

Rivera $20 per hour for his work at the Park Hyatt.

43.     From approximately April 2022 through approximately July 2023, Rivera spent

approximately 95 percent of his time working as the sole lifeguard at the pool at the Park Hyatt.

44.     During this period, Rivera's primary duty at LIV was to perform the duties of a

lifeguard, including but not limited to, ensuring the safety of the swimmers at the Park Hyatt

pool.

45.     The majority of  Rivera's job responsibilities and his primary duty at the Park

Hyatt consisted of physical labor, including, without limitation, taking chemical readings of the

pool and jacuzzi water every hour by bending down, inserting his arm in the water and placing a

tube in the water, cleaning the pool and the pool area, scrubbing the scum line on the pool walls

with a "Mr. Clean Magic Eraser," removing hair and other debris from the surface of pool with

a pool pole; putting away swim boards, noodles, goggles, toys and other items after use by

swimmers, performing a backwash to clean dirty pool water, which involves opening and

closing valves in a separate room in the basement or sub-basement of the building and often

climbing over boxes and other items stored in these rooms; folding towels and carrying towels

and bottles of water, putting used towels in a bin, checking the men's bathroom and making

sure it was fully-stocked with razors, shaving cream, Q-tips, mouthwash and towels, checking

on the health and safety of people in the steam room every 5 and 10 minutes; walking down to

the filter room in the basement to add or refill chemicals, filling the pool with water; walking

around the pool to watch the swimmers; giving instructions to swimmers to avoid dangerous

activities; and maintaining a constant state of readiness to identify dangers or risks and to assist

swimmers who displayed any signs of distress or discomfort.

46.     During this period, LIV paid Rivera his regular hourly rate, even when he worked more than forty hours per week.

47.     During this period, Rivera worked five days a week from approximately 5:20 a.m. to approximately either 1:00 p.m. or 1:10 p.m., three days a week, and from approximately 1:30 p.m. to approximately either 9:00 p.m. or 9:10 p.m. two days a week, for a total of 38 hours and 40 minutes.

48.     During this period, on approximately two occasions Rivera worked a sixth day, from approximately 6:45 am to approximately 1:45 pm; or approximately 1:45 p.m. to approximately 9 p.m. to cover the shift of another lifeguard.

49.     When Rivera worked a sixth day, he worked approximately 46 hours and 40 minutes per week.

50.     LIV paid Rivera his regular hourly rate of pay for the approximately 6 hours and 40 minutes he worked in excess of 40 hours per week.

51.     LIV paid Rivera his regular hourly rate of pay for the approximately 6 hours and 40 minutes he worked in excess of 40 hours per week on a separate check.

52.     LIV subjected Rivera and other Plaintiffs to its policy and practice of paying its employees their regular rate of pay for the hours 40 hours they worked in excess of forty hours per week, thereby denying them overtime compensation.

53.     LIV subjected Rivera and other Plaintiffs to its policy and practice of not paying its employees for all the hours worked they worked during the period that Rivera worked at the Park Hyatt.

54.    Although Rivera typically worked for approximately 25 minutes prior to the official start time of his morning shift at the Park Hyatt, which was at 5:45 a.m., LIV did not pay him for his pre-shift work.

55.    From approximately 5:20 a.m. to approximately 5:45 a.m., Rivera typically did a number of tasks that were necessary to get the pool ready for swimmers at 5:45 a.m.  These tasks included, without limitation, changing out of his street clothes into his mandatory LIV uniform, carrying bottles of waters and towels from a closet located across a hallway from the pool, placing the towels on display, setting up bottles of water for the swimmers, checking the PH balance and chlorine levels, cleaning the pool and the pool area, if necessary, and filling the pool with water when performing a backwash.

56.    Although Rivera at times worked for approximately 10 minutes after the official end time of his morning shift at the Park Hyatt, which was at 1 p.m., LIV did not pay him for his post-shift work.

57.    When Rivera worked until 1:10 p.m., typically he was waiting for the next shift's lifeguard to arrive, cleaning the pool area, if needed, and changing out of his mandatory LIV uniform into his street clothes.

58.    Although Rivera typically worked for approximately 15 minutes prior to the official start time of his afternoon shift at the Park Hyatt, which was at 1:45 p.m., LIV did not pay him for his pre-shift work.

59.    From approximately 1:30 p.m. to approximately 1:45 p.m., Rivera typically did a number of tasks that were necessary for him to be ready to start his shift at 1:45 p.m., including, without limitation, changing out of his street clothes into his mandatory LIV uniform, carrying bottles of waters and towels from a closet located across a hallway from the pool, placing the

towels on display, setting up bottles of water for the swimmers, and cleaning the pool and the pool area, if necessary.

60.    Although Rivera at times worked for approximately 10 minutes after the official end time of his afternoon/evening shift at the Park Hyatt, which was at 9 p.m., LIV did not pay him for his post-shift work.

61.    When Rivera worked until approximately 9:10 p.m., typically he was waiting for last-minute swimmers to finish their swim, carrying dirty towels from the pool area to a room outside the pool area, which he could do as long as swimmers were still the pool, making sure the pool and pool area was in order before he left and changing out of his mandatory LIV uniform into his street clothes.

62.    From approximately August 2023 through approximately December 7, 2024 Rivera worked at the Park Avenue Court, located at 120 East 87th Street, New York, New York 10128.

63.    LIV paid Rivera $20 per hour for his work at the Park Avenue Court.

64.    LIV assigned Rivera the title of "pool manager" when he started working at the Park Avenue Court.

65.    From approximately August 2023 through approximately December 7, 2024 Rivera spent approximately 95 percent of his time working as the sole lifeguard at the pool at the Park Ave Court.

66.    During this period, Rivera's primary duty at LIV was to perform the duties of a lifeguard, including but not limited to, ensuring the safety of the swimmers at the Park Avenue Court pool.

67.    The majority of Rivera's job responsibilities and his primary duty at the Park Avenue Court consisted of physical labor, including, without limitation, taking chemical readings of the pool water every hour by bending down, inserting his arm in the water and placing a tube in the water, cleaning the pool and the pool area, scrubbing the scum line on the pool walls with a "Mr. Clean Magic Eraser," removing hair and other debris from the surface of pool with a pool pole; putting away swim boards, noodles, goggles, toys and other items after use by swimmers, walking to the filter room, which was extremely hot, to get chemicals, performing a backwash to clean dirty pool water, which involves opening and closing valves in the filter room, at times moving a ladder and/or stepping over pipes in the filter room to get to a tank to check the readings on the tank, checking to make sure all the necessary chemicals were in the filter room, filling the pool with water; walking around the pool to watch the swimmers; giving instructions to swimmers to avoid dangerous activities; and maintaining a constant state of readiness to identify dangers or risks and to assist swimmers who displayed any signs of distress or discomfort.

68.    At the Park Avenue Court, Rivera had to make sure a separate room known as "Children's Room" was in order, which required him, without limitation, to pick up and organize the toys, little chairs and playhouse used by the children in the "Children's Room."

69.    At the Park Avenue Court, Rivera also had to make sure the gym was maintained properly, which required him, without limitation, to wipe down the equipment, put away and organize the weights that residents had used and left out, pick up the wipes that residents had used and left around the gym and check the equipment to see whether it was working properly.

70.    During this period, LIV paid Rivera $20 per hour, even when he worked more than forty hours per week.

71.     During this period, Rivera worked five days a week from approximately 2:45 p.m. to approximately either 9:00 p.m. or 9:10 p.m., with no lunch break, on Tuesdays and Thursdays; from  approximately 8:45 a.m. to approximately either 9:00 p.m. or  9:10 p.m., with a two-hour lunch break from approximately 1 p.m. to approximately 3 p.m., on Wednesdays; from approximately 8:45 a.m., to approximately 7 p.m. or 7:10 p.m., with a two-hour lunch break from approximately 1 p.m. to approximately 3 p.m., on Fridays; and from approximately 8:45 a.m., to approximately 6:00 p.m. or 6:10 p.m., with a one-hour lunch break from approximately 12 p.m. to approximately 1 p.m., on Saturdays; for a total of either approximately 39 hours and 15 minutes or approximately 39 hours 30 minutes.

72.     During this period, on approximately eight occasions, Rivera had to cover for a lifeguard who did not show up for his or her shift on a Monday or Tuesday. When Rivera did this, typically he worked approximately two hours on a Sunday or Monday until a substitute lifeguard arrived.

73.     On the weeks when Rivera had to work approximately two additional hours, he worked approximately 41 hours and 15 minutes or 41 hours and 30 minutes per week.

74.     At times, LIV paid Rivera for the hours he spent covering for a lifeguard who did not show up to work at the Park Avenue Court, and at times LIV did not pay him for the hours he spent covering for a lifeguard who did not show up to work at the Park Avenue Court.

75.     When LIV did pay Rivera for the hours he spent covering for a lifeguard who did not show up to work at the Park Avenue Court, LIV paid him his regular hourly rate of $20 per hour, even for the hours he worked in excess of 40 hours per week.

76.     LIV subjected Rivera and other Plaintiffs to its policy and practice of paying its employees their regular rate of pay for the hours 40 hours they worked in excess of forty hours

per week, thereby denying them overtime compensation.

77.    LIV subjected Rivera and other Plaintiffs to its policy and practice of not paying its employees for all the hours worked they worked during the period that he worked at the Park Avenue Court.

78.    Although Rivera typically worked for approximately 15 minutes prior to the official start time of his shifts at the Park Avenue Court, LIV did not pay him for his pre-shift work.

79.    Prior to the official start times of his shifts at the Park Avenue Court, Rivera typically had to do a number of tasks that were necessary to get the pool and himself ready for the pool to be open at the official start times.  These tasks included, without limitation, changing out of his street clothes into his mandatory LIV uniform, putting chemicals in the water before swimmers entered the pool, and mopping and cleaning the pool deck.

80.    Although Rivera at times worked for approximately 10 minutes after the official end time of his shifts at the Park Avenue Court, LIV did not pay him for his post-shift work.

81.    When Rivera worked after the official end time of his shifts at the Park Avenue Court, typically he was waiting for the next shift's lifeguard to arrive, cleaning the pool area, if needed, and changing out of his mandatory LIV uniform into his street clothes.

82.    At all relevant times, more than 25% of Rivera's and the other Plaintiffs working time at LIV required them to be engaged in physical labor.

83.    At all relevant times, Rivera and the other Plaintiffs were manual workers under the NYLL.

84.    Throughout his employment, LIV paid Rivera and the other Plaintiffs on a bi-

weekly basis.

85.     Throughout his employment at LIV, Rivera's and other Plaintiffs' pay never amounted to $900 per week.

86.     Thus, for half of each biweekly pay period, Plaintiff Rivera and other Plaintiffs were injured in that they were temporarily deprived of money owed to them, and they could not invest, earn interest on, or otherwise use these monies that were rightfully theirs.

87.     Accordingly, every day that said money was not paid to Plaintiff Rivera and the other Plaintiffs in a timely fashion, Plaintiffs lost the time value and use of that money.

## COLLECTIVE ALLEGATIONS

88.     Plaintiff Rivera brings this action against Defendant as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated current and former employees who worked for Defendant at any time during the three years prior to the filing of this action through the entry of judgment in this action ("the FLSA Collective").

89.     At all relevant times, the Plaintiff Rivera and the FLSA Collective were similarly situated, governed by similar pay practices and subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a failure and to promptly pay Plaintiff Rivera and the FLSA Collective.

90.     Defendant is liable under the FLSA for (a) failing to pay the Plaintiff Rivera and the FLSA Collective for all hours worked; (b) failing to pay the Plaintiff Rivera and the FLSA Collective overtime compensation for the hours worked in excess of forty per week; (c) maintaining a policy and practice of shaving off hours actually worked by Plaintiff Rivera and

the FLSA Collective and not paying for these hours; and (d) for failing to promptly pay the Plaintiff Rivera and the FLSA Collective on a weekly basis, and as such, notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

91.    The FLSA Collective consists of numerous similarly situated current and former employees of Defendant who were subject to the conduct complained of herein and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the action. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## CLASS ALLEGATIONS

92.    This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

93.    Plaintiff Rivera brings this action on behalf of himself and a class consisting of all similarly situated persons who worked for Defendant as manual laborers and/or non-exempt employees between July 3, 2019 and January 31, 2024 (the "Putative Class"). The Putative Class includes all persons employed as Manual Employees and/or non-exempt employees by Defendant in New York, including but not limited to lifeguards, pool attendants, pool managers, area managers, baristas, bellmen, concierges, estheticians, front desk associates, handymen, massage therapists, health club attendants and porters.

94.    Members of the Putative Class were required to spend more than 25% of their working time engaged in physical labor.

95.    The Putative Class is so numerous that joinder of all members is impracticable.

96.    The precise size of the Putative Class is unknown to Plaintiffs. The facts on which the calculation of that number can be based are presently within the sole control of Defendant.

In addition, the names of all potential members of the Putative Class are not known but can be readily identified through Defendant's records.

97.     The size of the Putative Class is in excess of forty (40) individuals.

98.     New York Law requires companies to pay their manual workers on a weekly basis and no later than seven days after the end of a week in wages are earned unless they receive an express authorization to pay in accordance with agreed terms of employment from the New York State Department of Labor Commissioner. *See* NYLL §191.

99.     Defendant received no such authorization from the New York State Department of Labor Commissioner.

100.    Defendant violated NYLL §191 and the FLSA by paying Plaintiff Rivera and the Putative Class every other week rather than on a weekly basis and by paying Plaintiff Rivera and the Putative Class more than 7 days after the completion of the first week of each pay period.

101.    The New York Labor Law requires employers to pay non-exempt employees who work in excess of forty hour per week, overtime compensation.

102.    The regulations accompanying the New York Labor Law, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, require an employer to pay an employee overtime "at a wage rate of one and one-half times the employee's regular rate."

103.    Defendant violated the NYLL and the regulations accompanying the NYLL by failing to pay Plaintiff Rivera and the Putative Class overtime compensation for the hours they worked in excess of forty hours per week.

104.    The questions of law and fact common to the Putative Class predominate over any

questions affecting only individual members.

105.    The claims of Plaintiff Rivera —that Defendant failed to pay him overtime compensation and failed to provide him with timely payment of wages under the NYLL—is typical of the claims of the Putative Class.

106.    Plaintiff Rivera and his counsel will fairly and adequately protect the interests of the Putative Class.

107.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

108.    During Plaintiff Rivera's employment with LIV, it employed over 500 manual workers, who spent more than 25% of their working time engaged in physical labor, including, but not limited to cleaning and maintaining pools and pool areas, scrubbing the scum line in the pools, using a pool pole to remove hair and debris from the water in the pools, putting away swim boards, noodles, goggles, toys and other items after use by swimmers, performing a backwash to clean dirty pool water; walking to the filter room in the basement or elsewhere to refill or add chemicals, filling the pool with water; walking around the pool to watch the swimmers; giving instructions to swimmers to avoid dangerous activities; maintaining a constant state of readiness to assist swimmers who displayed any sign of distress or discomfort; lifting bins containing chemicals, carrying beverages and food to event rooms, setting up event rooms for parties and meetings, serving residents and guests food and beverages at events; cleaning up event rooms, lifting and carrying boxes and other items necessary to provide the services and amenities offered by LIV to the residents of the buildings where they worked.

109.    LIV maintained and implemented a policy and practice of paying all its employees who worked in New York on a bi-weekly basis, including those who spent more

than 25% of working time engaged in physical labor.

110.    LIV maintained and implemented a policy and practice of not paying its non-exempt employees who worked more than forty hours a week overtime compensation.

111.    LIV maintained and implemented a policy and practice of deducting 30 or 60 minutes from their employees' paychecks for the time allotted for a lunch break, regardless of whether the employees were actually afforded a 30-minute lunch break.

### FIRST CAUSE OF ACTION
#### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

112.    Plaintiff Rivera repeats, re-alleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

113.    Plaintiff Rivera has consented to be a party to this action pursuant to 29 U.S.C. § 216(b).

114.    Defendant has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

115.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff Rivera and the FLSA Collective.

116.    Defendant failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

117.    Defendant willfully, knowingly and repeatedly refused to pay Plaintiff Rivera and the FLSA Collective overtime compensation at the statutory rate of time-and-a-half for all hours worked in excess of forty hours per workweek, as required by the FLSA.

118.    Because of the Defendant's willful violations of the FLSA, a three-year statute of

limitations applies to such violations pursuant to 29 U.S.C. § 255.

119.    As a result of the unlawful acts of Defendant, Plaintiff Rivera and the FLSA

Collective have been deprived of overtime compensation in amounts to be determined at trial,

and are entitled to recovery of such amounts, as well as liquidated damages, attorneys' fees,

costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

120.    Plaintiff Rivera repeats, re-alleges and incorporates by reference the foregoing

allegations as if set forth fully and again herein.

121.    The overtime provisions of Article 19 of the NYLL and its supporting regulations

apply to Defendant and protect Plaintiffs.

122.    Defendant failed to maintain proper employment records as required by N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. Lab.

Law §§ 195(4) and 661.

123.    The regulations accompanying the New York Labor Law, N.Y. Comp. Codes R.

& Regs. tit. 12, § 142-2.2, require an employer to pay an employee overtime "at a wage rate of

one and one-half times the employee's regular rate."

124.    The New York Labor Law, N.Y. Lab. Law § 663, provides that "[I]f any

employee is paid by his employer less than the wage to which he is entitled under the provisions

of this article, he may recover in a civil action the amount of any such underpayments, together

with costs and such reasonable attorney's fees."

125.    Upon information and belief, Plaintiffs worked more than forty (40) hours a week

19

while working for Defendant.

126.    Defendant failed to pay Plaintiffs overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) each week, as required by the NYLL.

127.    Consequently, by failing to pay to Plaintiff Rivera and other members of the New York Class the overtime compensation for work they performed after the first forty (40) hours worked in a week, Defendant violated the New York Labor Law, N.Y. Lab. Law § 663 and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

128.    Defendant's failure to pay the required overtime wages, as set forth above was willful within the meaning of §§ 198 and 663 of the New York Labor Law.

129.    As a result of the unlawful acts of Defendant, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, NYLL § 198, 650 et seq.

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE FOR OFF-THE-CLOCK WORK

130.    Plaintiff Rivera repeats, re-alleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

131.    The minimum wage provisions set forth in the NYLL and its supporting regulations apply to Defendant and protect Plaintiffs.

132.    Defendant failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

133.    Defendant was required to pay Plaintiffs at a rate not less than the minimum wage rate under the NYLL for all hours worked.

134.    Defendant failed to provide the proper minimum wage to Plaintiffs for their "off-the-clock" work, packing up equipment and cleaning the worksite, for the time they worked before and after their scheduled shift.

135.    By virtue of Defendant's failure to pay Plaintiffs the minimum wage for all hours worked, Defendant has willfully violated NYLL Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1.

136.    As a result of the unlawful acts of the Defendant, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, NYLL § 198, 650 et seq.

## FOURTH CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – FAILURE to PAY TIMELY WAGES

137.    Plaintiff Rivera repeats, realleges and incorporates by reference all allegations in all preceding paragraphs.

138.    The Plaintiff Rivera has consented to be a party to this action pursuant to 29 U.S.C. § 216(b).

139.    Defendant engaged in a widespread pattern and practice of violating the FLSA's prompt payment requirement, as detailed in this complaint.

140.    The payment provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq.*, and related federal regulations, apply to Defendant as an employer and the FLSA Collective as

employees.

141.    The FLSA and caselaw interpreting the same requires Defendant to remit the prompt and timely payment of wages. *See* 29 U.S.C. § 206(a); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 56 (2d Cir. 1998).

142.    Defendant's failure to pay the FLSA Collective on a weekly basis, as required by NYLL §191, violates the FLSA's prompt payment requirement.

143.    Defendant's violations of the FLSA were willful, knowing, and repeated.

144.    Because of Defendant's willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

145.    As a result of the unlawful acts by the Defendant, members of the FLSA Collective are entitled to recover from Defendant the amount of their untimely paid wages as liquidated damages, as well as attorney's fees and costs, and pre-judgment and post-judgment interest as provided for by 29 U.S.C. § 216(b).

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNTIMELY PAY

146.    Plaintiff Rivera repeats, realleges and incorporates by reference all allegations in all preceding paragraphs.

147.    The timely payment provisions set forth in Article 6 of the NYLL and related regulations apply to Defendant as employer and Plaintiffs as employees.

148.    The timely payment of wages provisions of NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiffs.

149.    New York Law requires companies to pay their manual workers on a weekly basis and no later than seven days after the end of a week in wages are earned unless they

receive an express authorization to pay in accordance with agreed terms of employment from the New York State Department of Labor Commissioner. *See* NYLL §191.

150.    Defendant received no such authorization from the New York State Department of Labor Commissioner.

151.    Defendant violated NYLL §191 by paying Rivera and the Putative Class every other week rather than on a weekly basis and by paying Rivera and the Putative Class more than 7 days after the completion of the first week of each pay period.

152.    As a result of the unlawful acts by Defendant, Plaintiffs are entitled to recover from Defendant the amount of their untimely paid wages as liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE THEFT PREVENTION ACT VIOLATION**

153.    Plaintiff Rivera repeats, re-alleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

154.    Defendant failed to furnish Plaintiffs with the wage statement(s) required by NYLL § 195 (3).

155.    Upon information and belief, Defendant's failure to furnish Plaintiffs with the notices and statements pursuant to NYLL § 195 (3) was willful and intentional.

156.    NYLL § 195 (3) requires that employers furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

157.    NYLL § 195 (4) requires, among other things, that employers establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages,

deductions and net wages for each employee.

158.    NYLL § 661 requires that Defendant maintain, inter alia, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

159.    12 N.Y.C.R.R. § 142-2.6 requires Defendant to establish, maintain and preserve, for six (6) years, weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

160.    N.Y.C.R.R. § 142-2.7 requires Defendant to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

161.    Defendant failed to provide Plaintiffs with the requisite statements described above in the foregoing paragraphs.

162.    Defendant's failure to provide wage statements listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendant and allowed Defendant to hide their wrongdoing.

163.    Defendant's failure to provide wage statements enabled Defendant to further delay providing proper compensation to employees entitled to protection under federal and state law.

164.    The effect of Defendant's failure to state the number of hours its employees worked, and the corresponding proper overtime rate, is to reduce the wages that employees are listed as having earned on their wage statements. This, in turn, reduces the employee earnings

that Defendant later reports to the IRS through the employees' W-2 forms, as such information is derived from the information on employees' wage statements.

165.    By effectively reducing the amount of its employees' earning on the employees' W-2 forms, Defendant reduces the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system.

166.    Defendant's failure to provide accurate wage statements causes a concrete, downstream monetary consequence and injury.

167.    As a result of Defendant's failure to furnish the wage statements pursuant to NYLL 195 (3), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek judgment against Defendant, as follows:

(1) Certification of this action as a collective pursuant to 29 U.S.C. § 216(b);

(2) That, at the earliest possible time, Plaintiff Rivera be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, employed by Defendant. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied prompt payment of wages;

(3) Certification of this action as a class action pursuant to F.R.C.P. Rule 23 on

behalf of the members of the Putative Class and appointing the Plaintiff Rivera and his counsel to represent the Putative Class;

(4) Designation of the Plaintiff Rivera as representative of the Putative Class, and counsel of record as Class Counsel;

(5) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

(6) An award of monetary damages in the amount of Plaintiffs' unpaid overtime compensation, plus liquidated damages;

(7) An award of monetary damages in the amount of Plaintiffs' unpaid wages for their off-the-clock work, plus liquidated damages;

(8) An award of monetary damages in the amount of Plaintiffs' unpaid wages due to Defendant's policy and practice to time shaving, plus liquidated damages;

(9) An award of $5,000 to each Plaintiff due to Defendant's violation of NYLL 195 (3);

(10)  An award of monetary damages in the amount of their untimely paid wages as liquidated damages;

(11)  prejudgment and post-judgment interest on all amounts awarded;

(12)  an order awarding Plaintiffs reasonable attorneys' fees, expenses, and costs of suit; and

(13)  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 14, 2025

Respectfully submitted,

ARENSON, DITTMAR & KARBAN

By: <u>S/Steven Arenson</u>
420 Lexington Avenue, Suite 1402
New York, New York 10170
Tel:     (212) 490-3600
Fax:     (212) 682-0278
avi@adklawfirm.com
*Attorneys for Plaintiffs*